**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**September 16, 2022**

# In the Court of Appeals of Georgia

A22A1023, A22A1024. LEE v. SMITH (two cases).

REESE, Judge.

In this motor vehicle collision case, after the jury entered a verdict in favor of plaintiff David A. Smith, II, defendant Donggue Lee appealed, and the Supreme Court of Georgia held that the trial court abused its discretion by excluding a defense witness based solely on Lee's late identification of the witness.[1] The case was remanded to the trial court to reconsider its ruling in light of specific factors other than untimeliness,[2] and on remand the trial court again excluded the defense witness. In Case No. A22A1023, Lee contends that the trial court (1) again excluded the witness based solely on his late disclosure and (2) misapplied each and every factor

---

[1] *Lee v. Smith*, 307 Ga. 815 (838 SE2d 870) (2020).

[2] Id. at 825 (4).

set forth in the Supreme Court's decision. In Case No. A22A1024, Lee challenges the trial court's supersedeas bond. For the reasons set forth infra, we affirm in Case No. A22A1023 and dismiss as moot Case No. A22A1024.

Following a jury's verdict and the trial court's subsequent entry of judgment, we must construe the evidence in favor of upholding the verdict.[3] So viewed, the record shows that Smith "was a world-ranked collegiate high jumper who suffered several injuries, including a fractured left hip, in a September 2012 car collision."[4] Smith graduated from college in 2014, but he continued to train as a high jumper while he pursued a master's degree. Smith filed suit against Lee in September 2014.

In its opinion, the Supreme Court noted that:

Smith requested in his complaint damages for "pain and suffering," "medical expenses," and "further relief as the trial court may deem just and proper," but he made no specific claim for future lost wages. After answering the complaint, Lee served written discovery on Smith, asking him to identify any expert witnesses who would testify at trial and

---

[3] *Dunwoody Obstetrics & Gynecology v. Franklin*, 363 Ga. App. 90, 91 (870 SE2d 592) (2022).

[4] *Lee*, 307 Ga. at 815-816 (1).

requesting an itemization of all special damages he was claiming as a result of the accident, including future lost earnings.[5]

On July 1, 2015, Smith, who was still a student at the time, responded in part to Lee's interrogatories as follows:

Interrogatory Number 16.

Identify each expert expected to testify at trial and state the subject matter about which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and give a summary of the grounds for each opinion.

RESPONSE: Smith has not made a decision regarding expert witnesses who may testify at trial, and, as such, this interrogatory will require supplementation at a later date in which supplementation will be pursuant to the requirements of the Georgia Civil Practice Act.[6]

With regard to an interrogatory on special damages, Smith listed his medical and rental car expenses.[7] In response to an interrogatory on lost earnings, Smith indicated

---

[5] Id. at 816 (1) (punctuation omitted).

[6] *Lee*, 307 Ga. at 816 (1) (punctuation omitted).

[7] Id. at 816-817 (1).

that he was "not claiming lost earnings."[8] However, in response to Lee's request for

production of documents, Smith stated:

Request for Production Number 1.

If you are making a claim for loss of income or wages or loss or diminishment of future wages or earning capacity, provide a copy of your W-2, W-4 and 1099 forms and federal and state income tax returns, . . . for the past five years. . . .

RESPONSE: Smith is not claiming past or current lost wages. However, Smith may present evidence at the time of trial on this issue of diminished future wages or earning capacity, and, as such, this response may require supplementation at a later date prior to trial in accordance with the Civil Practice Act.[9]

In response to other requests for production of documents, Smith indicated that he

was not claiming lost current or past wages.[10]

"Though Smith was able to return to competition and compete in the 2016

Olympics, he underwent surgery in January 2017 to remove a bone chip from his hip

---

[8] Id. at 817 (1).

[9] Id. at 817-818 (1) (punctuation omitted).

[10] Id. at 818 (1).

4

joint that, he alleges, was caused by the 2012 collision."[11] Shortly before his surgery, Smith finished his master's degree. On March 30, 2017, after both the surgery and his graduation, Smith supplemented his response to Interrogatory No. 16 as follows:

> Smith further intends to call various damages witnesses at trial regarding the impact that Smith's injuries will have upon his future in various aspects of his personal life and athletic career, including treating physicians and Smith's agent, Leo Finkley. To the extent necessary, and in the event the parties cannot stipulate to an agreed upon rate for reduction of future lost earnings to present cash value, Smith intends to call to trial to testify for that limited purpose a qualified economist.[12]

The same day, Smith sent to Lee a settlement demand for $3,000,000, in which he noted that his damages were extensive and, were it not for the injuries caused by the collision, he could have continued to compete as an Olympic athlete and world champion.

On April 5, 2017, the trial court entered its fourth consent scheduling order. The order required both parties to identify all witnesses by May 12, 2017, and complete all discovery depositions by June 15 and all trial depositions by July 28, and

---

[11] *Lee*, 307 Ga. at 818 (1).

[12] Id. at 818-819 (1) (punctuation and footnote omitted).

set the case for trial on August 7, 2017. On April 14, new defense counsel entered an appearance. A few weeks later, Smith's new sports agent, Lamont Dagen, sent Smith's counsel an email detailing his opinion as to the impact of the collision on Smith's athletic career and earning potential.

On May 12, the last day for identifying witnesses, Smith again supplemented Interrogatory No. 16 to identify Dagen. He also supplemented his response to the interrogatory regarding lost earnings:

> In addition to past, current and future lost earnings, Smith has further suffered special and/or general damages in the form of, inter alia, diminished earning capacity, diminished ability to work, labor or earn wages. Since the date of the accident giving rise to this lawsuit, Smith's occupation changed upon graduation from Auburn University in May 2016 from collegiate high jumper to professional high jumper. As a result of the injuries suffered during the collision and the reasonable and necessary medical treatment resulting therefrom (including, inter alia, surgery in January 2017), Smith has lost earnings (including, inter alia, contract, sponsorship, incentive, appearance and various other forms of earnings associated with his profession) in an amount to be more fully shown at trial.[13]

---

[13] *Lee*, 307 Ga. at 819 (1) (punctuation omitted).

Also on May 12, Lee's counsel inquired when it would be possible for him to take Smith's agent's deposition and propounded additional discovery regarding Smith's sports agents, past earnings, and anticipated future earnings.

Lee deposed Dagen on June 20, and, one week later, identified an expert he planned to call as a rebuttal witness, sports agent John Nubani. Lee scheduled an evidentiary deposition of Nubani for July 28.

On July 19, at the pretrial hearing, Smith argued that Nubani should be excluded from testifying because he was not identified by May 12 and because Smith would be prejudiced in that he would not have time for Dagen to review Nubani's testimony prior to trial. The trial court excluded Lee's witness.

At trial, Lee conceded liability for the collision. Smith's doctor testified that Smith's hip fracture did not heal correctly, necessitating the 2017 surgery, and he opined that Smith would not be able to return to high jumping at the same level that he had reached prior to the fracture and subsequent surgery. Smith testified to the injury's impact on his performance and how the collision prevented him from becoming a professional athlete. Dagen testified as to Smith's lost wages and lost earning potential and opined that, had Smith not had to undergo surgery, he could

have enjoyed a ten-year career as a professional high jumper and earned $1,000,000 over the course of his career.

During argument, Lee asserted that Smith's performance was not impaired by the collision and that Smith's claim of damages was speculative because he had no contract offers. However, Smith's counsel emphasized Lee's failure to rebut Dagen's testimony, as well as his failure to rebut the medical evidence. Ultimately, the jury returned a $2,000,000 general verdict for Smith.

Lee appealed, and a divided Court of Appeals affirmed the trial court's decision to exclude Lee's rebuttal witness.[14] The Supreme Court reversed, holding that the late identification of a witness *alone* does not *automatically* justify the exclusion of that witness.[15] Rather, a trial court must exercise its discretion and evaluate the particular circumstances of the party's noncompliance with its scheduling order to determine what, if any, action is necessary to vindicate its authority and provide fairness to the parties.[16] Nevertheless, the Supreme Court held that even though the trial court

---

[14] *Lee v. Smith*, 346 Ga. App. 694 (1) (816 SE2d 784) (2018), rev'd in part, 307 Ga. 815 (838 SE2d 870) (2020), and vacated, 356 Ga. App. 330 (847 SE2d 1) (2020).

[15] See *Lee*, 307 Ga. at 821-822 (2).

[16] Id. at 820-823 (2), (3).

excluded Lee's expert on an improper basis, "we cannot say on the current record that the trial court could not have come to the same conclusion if it had properly exercised its discretion" by considering the relevant factors.[17] The Supreme Court remanded the case to this Court,[18] and we remanded the case to the trial court.[19]

On remand, following briefing and a hearing, the trial court again excluded Lee's rebuttal witness. Thereafter, the trial court granted Smith's motion for supersedeas bond and ordered Lee to post a cash bond in the amount of $3,000,000 into the registry of the court. Lee's insurer, Travelers Casualty and Surety Company of America, ultimately filed a surety bond. These appeals follow.

"A trial court has broad discretion to control discovery, including the imposition of sanctions, and this Court will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion."[20] "An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling

---

[17] Id. at 825 (4).

[18] Id.

[19] *Lee*, 356 Ga. App. at 331.

[20] *Resurgens, P.C. v. Elliott*, 301 Ga. 589, 597 (2) (b) (800 SE2d 580) (2017) (citations and punctuation omitted).

misstates or misapplies the relevant law."[21] The deferential abuse-of-discretion standard is used in discovery disputes because, unlike the appellate courts, "the trial court directly supervised the ebb and flow of the discovery and trial process in the case and had the opportunity to observe and assess the conduct, demeanor, and credibility of the parties and their counsel throughout the proceedings."[22] This Court also reviews a trial court's order requiring a supersedeas bond for abuse of discretion.[23] With these general principles in mind, we turn now to Lee's specific claims of error.

Case No. A22A1023

In two related arguments, Lee contends that the trial court abused its discretion by again excluding his late-disclosed witness.

"Once a trial court has properly exercised its discretion to enter an order setting a scheduling deadline, compliance with that order is of paramount importance, as a party's failure to comply with it could subject that party to sanctions, including the

---

[21] *Lewis v. Lewis*, 316 Ga. App. 67, 68 (728 SE2d 741) (2012) (citation and punctuation omitted).

[22] *Resurgens*, 301 Ga. at 598 (2) (b) (citation and punctuation omitted).

[23] *Gaslowitz v. Stabilis Fund I*, 331 Ga. App. 152, 157 (3) (770 SE2d 245) (2015).

harsh sanction of excluding a proffered witness from testifying at trial."[24] However,

the late identification of a witness, standing alone, does not automatically justify the

exclusion of that witness.[25] Rather, the Supreme Court held that when determining

whether to exclude a witness who a party did not timely identify in compliance with

the trial court's scheduling order, the trial court should consider: "(1) the explanation

for the failure to disclose the witness, (2) the importance of the testimony, (3) the

prejudice to the opposing party if the witness is allowed to testify, and (4) whether a

less harsh remedy than the exclusion of the witness would be sufficient to ameliorate

the prejudice and vindicate the trial court's authority."[26] When "the trial court defaults

to the most extreme sanction available based *solely* upon a party's failure to meet a

deadline in a scheduling order without considering any other factors, that court will

have abused its discretion."[27]

---

[24] *Lee*, 307 Ga. at 821 (2).

[25] Id.

[26] Id. at 824 (3); see id. at 823 (3) (noting that previously "our own case law and Georgia statutes" had not directly addressed all of the specific factors that a trial court should consider).

[27] Id. at 821-822 (2) (emphasis in original).

11

1. Lee contends the trial court "paid lip service" to the factors articulated by the Supreme Court but that the sole reason for the court's decision to exclude the defense witness was Lee's late disclosure. We are not persuaded. In fact, the trial court considered not only Lee's failure to timely disclose the witness but each of the four factors set forth by the Supreme Court.

On remand, the trial court made specific findings as to each and every factor. Notably, the trial court considered not only Lee's late disclosure of the witness, Lee's explanation of which the court found "wanting[,]" but also Lee's failure to alert the court to the problem prior to the hearing on July 19, 2017, the importance of the testimony, Lee's failure to make a proffer as to Nubani's proposed testimony regarding Smith's earnings, the prejudice to Smith, and whether other remedies were sufficient under the circumstances. Given the court's specific and detailed findings, Lee's claim that the trial court merely paid lip service to the four factors set forth by the Supreme Court is not compelling.[28]

---

[28] Compare *Lamb v. Javed*, 303 Ga. App. 278, 280-281 (1) (692 SE2d 861) (2010) (rejecting an argument that the trial court erred by failing to apply forum non conveniens factors on remand when the court made written findings considering and weighing each of the relevant factors), with *Cortes v. Ga. Power Co.*, 361 Ga. App. 103, 105 (863 SE2d 376) (2021) (vacating the trial court's dismissal order when the court dismissed the plaintiff's case for missing a deadline "without apparent consideration of any other circumstances").

2. Lee also contends that the trial court misapplied all of the factors identified by the Supreme Court. Although a different trial court might have fashioned a different remedy, we cannot say that the trial court abused its discretion in excluding Lee's late-identified witness given the circumstances present in this case.[29]

(a) With regard to the first factor, "the explanation for the failure to disclose the witness,"[30] Lee argues that the trial court abused its discretion in finding that his explanation for the failure to timely disclose Nubani weighed in favor of exclusion.

Underlying Lee's argument is his contention that Smith provided false or deliberately misleading discovery responses,[31] and, as a result, he first learned of Smith's claim for lost wages, including lost future earnings, in May 2017, on the last day to identify witnesses for trial. As an initial matter, we note that even under Lee's

---

[29] See *Williams v. State*, 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014) ("A proper application of the abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach, and that there will often be occasions in which we will affirm the evidentiary ruling of a trial court even though we would have gone the other way had it been our call.") (punctuation and footnote omitted).

[30] *Lee*, 307 Ga. at 824 (3).

[31] See *Resurgens*, 301 Ga. at 595 (2) (a) ("When a party receives a substantive answer to a discovery request, they are entitled to believe that answer, and they are not required to file a motion to compel or seek clarification of that substantive response in order to obtain sanctions should they later learn that the answer provided was false or intentionally misleading.").

version of events, in which he first learned of Smith's lost earnings claim in May, more than one month passed before he identified a rebuttal expert and more than two months passed before he alerted the court. Moreover, the trial court found that Lee's position was "disingenous[,]"[32] and this finding is supported by some evidence. Smith disclosed in July 2015 that he "may present evidence at the time of trial on this issue of diminished future wages or earning capacity[.]"[33] Even if this disclosure was insufficient, in March 2017, *prior* to the setting of the court's scheduling order, Smith disclosed that he intended to call "various damages witnesses" regarding the impact of his injuries on his "athletic career," including his agent and, if necessary, a qualified economist.[34] Lee nevertheless argues he was entitled to rely on Smith's earlier discovery responses that Smith was not claiming past or current lost wages and that he could not have named a rebuttal expert earlier because he had no way of knowing the substance of Dagen's testimony until Dagen's deposition on June 20,

---

[32] See id. at 598 (2) (b) (explaining that during discovery matters the trial court has "the opportunity to observe and assess the conduct, demeanor, and credibility of the parties and their counsel throughout the proceedings") (citation and punctuation omitted).

[33] *Lee*, 307 Ga. at 817 (1).

[34] Id. at 818-819 (1).

14

2017. Even without knowing the exact testimony Dagen would provide, given Smith's disclosures in July 2015 and March 2017, some evidence supports the trial court's finding that Lee knew before the last day to identify witnesses in May 2017 that Smith intended to present evidence of diminished earning capacity and the impact of the collision on his athletic career, such that Lee would need a witness in order to rebut this evidence.

Lee also argues that the trial court abused its discretion by focusing on his counsel's failure to alert the court to the problem immediately. As Lee notes, "[p]rior to filing a motion seeking resolution of a discovery dispute, counsel for the moving party shall confer with counsel for the opposing party . . . in a good faith effort to resolve the matters involved."[35] However, as early as June 7, Smith's counsel made clear that he would not agree to any discovery outside the parameters of the scheduling order and that the parties needed to consult with the trial court. Smith also immediately objected to Lee's June 28 identification of his proposed rebuttal witness as untimely. Accordingly, the trial court did not abuse its discretion by faulting Lee for not alerting the court to the problem prior to the July 19 hearing.

---

[35] Uniform Superior Court Rule 6.4 (b).

Given the evidence that Lee was aware of Smith's claim for diminished future wages or earning capacity prior to May 2017 yet failed to act promptly to identify a witness or alert the court, the trial court did not abuse its discretion in weighing this factor against Lee.[36]

(b) With regard to the second factor, "the importance of the testimony,"[37] Lee argues that the rebuttal witness's testimony was essential to his defense.

As an initial matter, at the hearing on July 19, 2017, Lee argued that Nubani would testify that high jumpers do not have long careers and do not make as much money as Dagen opined. However, at no point, not even during the hearing on remand, did Lee provide a proffer to the trial court of Nubani's expected testimony as to the amount of Smith's future lost earnings. Given Lee's failure to make a proffer

---

[36] See *J.P. Carey Enterprises v. Cuentas, Inc.*, 361 Ga. App. 383, 397 (3) (864 SE2d 588) (2021) (finding no abuse of discretion in striking a party's expert witness affidavit when there was evidence that the party was aware of the defense months earlier); *Knight v. Miami-Dade County*, 856 F3d 795, 812 (II) (B) (11th Cir. 2017) (finding no abuse of discretion in excluding witness when plaintiffs had at least five months to gather their experts and did not show a substantial justification for their tardiness). Lee argues that Smith improperly relies on federal case law in support of his position, but the federal court in *Knight* applied the same four-factor test adopted by our Supreme Court, id. at 811 (II) (B), and our Supreme Court cited numerous federal cases, including *Knight*, in its decision. See *Lee*, 307 Ga. at 823 (3) (listing cases).

[37] *Lee*, 307 Ga. at 824 (3).

16

as to Nubani's proposed testimony, the trial court concluded that it "was not able to form a reasonable opinion about the importance of the excluded testimony." Furthermore, because Lee promptly identified a rebuttal expert after Dagen's June 20 deposition, the trial court found that Lee simply did not wish to incur the expense of hiring his own expert until then. Finally, the court noted that Lee's primary defense at trial was causation, including whether Smith had pre-existing injuries that impacted his career and whether he was able to fully recover after the accident. Considering all these factors, the trial court concluded that Nubani's testimony was not so important that its late disclosure warranted a less harsh remedy. In light of Lee's failure to provide a proffer, we cannot disturb the trial court's ruling on this factor.[38]

(c) As to the third factor, "the prejudice to the opposing party if the witness is allowed to testify,"[39] Lee argues that there was no prejudice to Smith because Lee was

---

[38] See *Landry v. Walsh*, 342 Ga. App. 283, 285 (1) (801 SE2d 553) (2017) ("To establish reversible error, a party seeking review of a trial court's ruling excluding testimony must show how the testimony would have benefitted her case. To make this showing, a party must proffer the excluded testimony to the trial court. Absent such a proffer, we have no basis in the record to disturb the trial court's ruling.") (citations omitted).

[39] *Lee*, 307 Ga. at 824 (3).

17

able to schedule a deposition of Nubani within the timeframe set forth in the scheduling order.

As set forth above, the scheduling order called for the parties to complete all trial depositions by Friday, July 28, 2017, and set the case for trial on Monday, August 7. The trial court determined that Lee's late disclosure put Smith in the position of not having sufficient time to effectively examine Nubani because Lee scheduled Nubani's trial deposition in Pittsburgh, Pennsylvania, on Friday, July 28, just five business days prior to trial, and Lee also scheduled a deposition of one of Smith's treating doctors in Birmingham, Alabama, on Tuesday, July 25. Given the travel and the time it would have taken to obtain a transcript of Nubani's deposition testimony, some evidence supports the trial court's finding that Smith would have been prejudiced by allowing Nubani to testify.[40]

(d) Lastly, with regard to the fourth factor, "whether a less harsh remedy than the exclusion of the witness would be sufficient to ameliorate the prejudice and

---

[40] See *Geiserman v. MacDonald*, 893 F2d 787, 791 (II) (5th Cir. 1990) (affirming trial court's exclusion of a witness who was disclosed late when the delay would have disrupted the opponent's preparation). As with *Knight*, 856 F3d 795, the Supreme Court cited *Geiserman* in its decision. See *Lee*, 307 Ga. at 823 (3) (listing cases).

18

vindicate the trial court's authority[,]"[41] Lee argues that the trial court could have and should have granted a continuance.

The trial court found that the only less harsh remedies available to it by the time of the July 19 hearing were to (1) subject the parties to an onerous deposition schedule in the weeks immediately prior to trial, or (2) grant a continuance. However, given that the purported need for a continuance had been created by Lee's failure to comply with the scheduling order and his subsequent failure to timely ask the court for relief when a less harsh remedy would not have caused prejudice to either party, the court concluded that the harm to Smith in imposing a less harsh remedy outweighed the harm to Lee in excluding his witness. The trial court did not abuse its discretion in reaching this conclusion.[42]

Given the circumstances present in this case, we cannot conclude that the trial court abused its discretion in again excluding Lee's late-disclosed witness.

---

[41] *Lee*, 307 Ga. at 824 (3).

[42] See *Cuentas*, 361 Ga. App. at 398 (3) (finding no abuse of discretion in striking an expert witness affidavit when the trial court expressed skepticism of the party's proffered reason for delay and did not want to countenance suspected legal gamesmanship).

19

3. Finally, Lee contends that the trial court abused its discretion in requiring him to pay a cash supersedeas bond. As set forth above, Lee did not actually post a cash bond. For this reason and because the main appeal has been decided, Lee's appeal of the supersedeas bond is dismissed as moot.[43]

*Judgment affirmed in Case No. A22A1023. Appeal dismissed as moot in Case No. A22A1024. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[43] See *Roberts v. Roberts*, 226 Ga. 203, 206 (3) (173 SE2d 675) (1970) ("The issue of the propriety of the trial court's requiring a supersedeas bond on the appeal is moot. The record does not reveal that the bond was in fact paid."); *Muhammad v. Power Lending*, 311 Ga. App. 347, 349-350 (5) (715 SE2d 734) (2011) (dismissing as moot an appeal from a supersedeas bond when the main appeal had been decided).